[Crim. No. 7995.   Second Dist., Div. Four.   May 29, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN M. KNOLL, Defendant and Appellant.

*Assigned by Chairman of Judicial Council.

Kahl & Kostas and James S. Kostas for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, for Plaintiff and Respondent.

JEFFERSON, J.—A jury returned a verdict of guilty against defendant for receiving stolen property in violation of section 496, Penal Code, as set forth in counts 2 and 3 of the information. A mistrial was declared as to count one; on motion of the People, count one was dismissed. A motion for a new trial was denied. Defendant was placed on probation for a period of five years on the condition that the first year be served in the county jail and that defendant pay a fine of $8,000.

The evidence shows that in the early part of January 1961 a person by the name of Walker, accompanied by one Kuranoff, drove his station wagon to the residence of defendant in Lancaster, California. They delivered to defendant six portable television sets, an FM radio, two stereo phonographs and a transoceanic radio. Defendant gave Kuranoff $700 for this merchandise. The testimony further shows that defendant arranged with Walker that he should bring any further shipments from Kuranoff to defendant. Thereafter, between the first part of January and the middle of February 1961, Walker made 15 or 16 trips to the premises of defendant.

It was further testified that the goods would be taken from burglaries to Walker's home in Bakersfield. Defendant suggested to Walker to take the old Ridge Route because the inspection station closed at 1:30 a. m.; that he should start from Bakersfield after 11 o'clock at night; that he was to make delivery of merchandise to defendant between 6:30 and 7:30 a. m. It was further testified that Walker participated with Kuranoff in one burglary of the Air Reduction Pacific Company in Bakersfield and Walker was paid for making the deliveries of the goods either by cash or money orders from Kuranoff.

Walker testified that he delivered a 3,500-pound load of wire and electrical goods from the Gifford Electric Company in Bakersfield; much of the merchandise was marked with the company's name. Defendant assisted Walker in unloading the merchandise and directed him to stack the boxes so the firm name would not be visible. The load of electrical goods was then covered with a tarpaulin from the truck; defendant paid Walker $500 for this load in $100 bills. The superintendent of the Gifford Electric Company testified that between February 4 and 6 the business sustained a loss of $3,250 worth of electrical goods in a burglary. The loss was inventoried and turned over to the police and later about two-thirds of

the materials lost were identified and recovered from the police.

One of the investigating officers testified that he secured a search warrant and searched defendant's residence on or about February 28, 1961. Among other items he found there were the electrical supplies of the Gifford Electric Company.

It was further testified that Greenfield Hardware Company in Bakersfield had a burglary on January 13, 1961, and guns and supplies valued at $2,109.88 were taken. Some of this merchandise found in defendant's premises was later recovered from the Sheriff's office. Walker testified he made delivery of these guns to defendant immediately after the burglary of the Greenfield Hardware of Bakersfield.

Defendant told Walker that he could not dispose of the guns and would have to bury them on his grounds for a number of years until they "cooled off." The officer testified that some 35 guns were taken from the residence of defendant.

Defendant took the stand in his own defense and stated he had no reason to believe that he was dealing in stolen merchandise. He said he took all of the stolen articles found in his possession on consignment and expected to get invoices for them. He further testified that he had business machines and guns in a cubby hole in his closet because he was building on his house and store. All of the merchandise that was brought to defendant's house was delivered by witnesses Walker and Kuranoff. Defendant admitted that he knew Kuranoff. At the time of defendant's trial, both Kuranoff and Walker had been sentenced to state prison as a result of conviction for receiving stolen property.

Defendant contends he was denied his right of effective representation by counsel guaranteed by the California and federal Constitutions, due to his counsel's serious mental and physical illness throughout the course of the trial. The record does not reflect this contention. At one point in the trial Mr. Haley, defense counsel, suggested during the course of cross-examination, "Your Honor, I am about to start on a new line of interrogation and I am not feeling very well at all." The court recessed early for that reason.

The next morning, defendant's counsel proceeded with the trial. Shortly before the noon hour the district attorney suggested an early adjournment and the court agreed. In consenting, defendant's counsel said, "All I can say is I am always happy to quit." The court suggested reconvening at 1:45 p. m. that afternoon and requested of counsel, "Is that

all right with you, Mr. Haley?'' Defense counsel responded, ''Yes, your Honor.''

The record further indicates that on reconvening the court said, ''Ladies and gentlemen of the jury, one of the attorneys is ill and has been most considerate and possibly more than he should have been in continuing when he didn't feel like it so that the witnesses would not be unduly inconvenienced. We have reached the point now where he is due for a week-end in the hospital. I think probably if we continue it until Monday at 1:45 he will be able to proceed at that time. . . .''

From a review of the facts it does not appear that counsel's illness was serious enough to interfere unduly with the discharge of his duties. No mental illness of any kind was indicated and the record reflects that defendant was adequately represented at all stages of the proceedings. Defendant's counsel in his argument to the jury stated:

''I would like to close with this remark, that it is entirely possible that I won't be able to be here in the morning. The Court has informed me he will not instruct the jury until tomorrow morning and since no one, and I mean no one, has anything to do with the instructions the Court gives you but the Court himself, I am going to ask that the Court appoint someone to sit with my defendant and represent me in the morning because of the way I feel now, I don't think I am going to make it. I do at this time want to say to all of you, thank you very, very much.''

█  '' 'Before it can be held that an accused's representation by counsel was inadequate to the degree that it violated his right to representation under the Fourteenth Amendment to the Constitution of the United States, an extreme case must be disclosed. The representation must be of such a low order as to render the trial a farce and a mockery of justice [citation], or it must be shown that the essential integrity of the proceeding as a trial was destroyed by the incompetency of counsel [citation]. . . . █  While the opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner, the courts are uniform in holding that the claimed absence of effective representation will not be sustained unless the circumstances surrounding the trial indicate a representation so lacking in competence that it becomes the duty of the court to observe and to correct it.' . . . [citation].'' (*People* v. *Prado*, 190 Cal.App.2d, 374, 377 [12 Cal.Rptr. 141].)

█  Defendant next contends the court erred in permitting the prosecution to introduce certain evidence in rebuttal

that properly constituted a part of its case in chief. With this we disagree. The situation here was similar to the one in *People* v. *Mackey,* 171 Cal.App.2d 513, 517 [340 P.2d 688]: "Although his testimony might properly have been part of the prosecution's case in chief, it was allowable as additional evidence upon a point put into dispute by . . . [the defendant's] testimony. [Citation.]"

■ Defendant further contends the court erred in denying defendant's motion for new trial based upon newly discovered evidence. This contention is without merit. A review of the affidavit supporting the motion on the grounds of newly discovered evidence clearly shows that no different result could have been accomplished even with the production of the so-called newly discovered evidence.

■ "The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests in the sound discretion of the trial court. [Citation.] ■ It is also well settled that such motions are looked upon with disfavor [citations], and that an appellate court will not interfere except upon a clear showing of an abuse of discretion by the trial court. [Citations.] ■ ■ Facts that are within the knowledge of the defendant at the time of trial are not newly discovered even though he did not make them known to his counsel until later [citations]; and it must appear that evidence, rather than merely its materiality, be newly discovered in order to support a motion for a new trial on that ground. [Citations.]" (*People* v. *Greenwood,* 47 Cal.2d 819, 821-822 [306 P.2d 427].)

We do not find the trial court abused its discretion in this case.

The judgment and order are affirmed.

Burke, P. J., and Balthis, J., concurred.

A petition for a rehearing was denied June 13, 1962, and appellant's petition for a hearing by the Supreme Court was denied July 25, 1962. Dooling, J.,* participated in place of Traynor, J.

---

*Assigned by Chairman of Judicial Council.